STANLEY GOFF (Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

Fulvio F. Cajina, State Bar No. 289126
LAW OFFICE OF FULVIO F. CAJINA
528 Grand Avenue
Oakland, CA 94610
Telephone: (415) 601-0779
Facsimile: (510) 225-2636

Email: fulvio@cajinalaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEL GARCIA, an individual; M.Y. AND L.Y., minors by and through their guardian ad litem VANESSA RUIZ; L.Y., a minor by and through his guardian ad litem FRANCISCA URIOSTEGUI,<br><br>Plaintiff,<br>v.<br><br>YUBA COUNTY SHERIFF'S DEPARTMENT; YUBA COUNTY SHERIFF'S DEPUTIES DOES 1-5; CITY OF VACAVILLE; and VACAVILLE POLICE OFFICER DOES 6-10<br>Defendants. | **Case No. 2:19-cv-02621-KJM-DB**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE OF MINOR PLAINTIFFS' CLAIMS**<br><br>**DATE: January 26, 2024**<br>**TIME: 10:00 a.m.**<br>**JUDGE: Kimberly Mueller**<br>**COURTROOM: 3; 15th Floor** |

1

1   PLEASE TAKE NOTICE that on January 26, 2024, at 10:00 a.m. at 501 I St # 4200,
2   Sacramento, CA 95814, Courtroom 3, 15th Floor, before the Honorable Kimberly Mueller,
3   Plaintiffs move for an order granting Plaintiffs' **Motion for Approval of Settlement and**
4   **Compromise of Minor Plaintiffs' claims.** The motion will be based on this Notice and Motion,
5   declaration and Memorandum of Points and Authorities.

December 4, 2023                                         /s/ *Stanley Goff*_____

                                                         STANLEY GOFF
                                                         Attorney for PLAINTIFF

### Certification of Meet and Confer

I certify that I met and conferred with Defendants' counsel before filing the instant motion, by emailing Defendants' counsel and informing them that the instant motion was going to be filed and the date set for the motion to be heard will on January 26, 2023.  Defense counsel responded to my email and informed me that they were available to attend the motion hearing set for January 26, 2023.


December 4, 2023                                         /s/ *Stanley Goff*_____

                                                         STANLEY GOFF
                                                         Attorney for PLAINTIFF

2

FRANCISCA URIOSTEGUI, guardian ad litem for Plaintiff L.Y. and VANESSA RUIZ., guardian ad litem for Plaintiffs M.Y. and L.Y. hereby requests that the Court approve the proposed SETTLEMENT AND COMPROMISE of the Minor Plaintiffs claims as set forth in the settlement agreement. The terms and the amount of the settlement will be provided below.

## I.     NATURE OF THE CASE

Plaintiffs CARMEL GARCIA (decedent's mother) and decedent's three minor sons, by and through their respective guardians ad litem, brought forth claims for Fourth and Fourteenth Amendment violations as well as *Monell* claims against Defendant CITY OF VACAVILLE and its officers arising from the death of Samuel Levi Yasko on December 29, 2017. On that date, Mr. Yasko was undergoing a mental health crisis. According to his brother, Joseph Sturgeon, Samuel had tried to commit suicide while Joseph and his friend, Jason Hays, were driving Samuel home from work. In the car, Samuel had wrapped a seatbelt around his neck, prompting Joseph and Hays to exit the highway and drive to a gas station in Vacaville, California. Eventually, Joseph and his friend called Vacaville Police dispatch to report that Samuel was trying to commit suicide and to request assistance. Vacaville officers responded to the call.

The responding officers, Defendants JULIE BAILEY, her husband, CHUCK BAILEY, and sergeant DAVID SPENCER all agree that Samuel was not assaultive (i.e., he never threw punches or kicks at the officers) but agitated. Within minutes of arriving on scene, officers had Samuel in handcuffs and prone on the concrete floor of the gas station parking lot. Samuel was not being detained for committing a crime, but presumably so that he could not hurt himself.

3

Body camera footage shows that for the next several minutes, instead of placing Samuel in a recovery position − on his side to facilitate his breathing, Officers BAILEY, C. BAILEY, and Sgt. SPENCER, together with Officer DUSTIN WILLIS, continued to apply body weight to Samuel's torso, including near his neck area, while he remained handcuffed and prone. Samuel's breathing became shallower and shallower on the video. Consistent with the Ninth Circuit warnings regarding positional asphyxia, Samuel stopped breathing in that position and lost consciousness. The officers then tried CPR, but it is too late. Samuel was brain dead.

Plaintiffs brought claims for excessive force, loss of familial association, and failure to train claims against Defendants. Specifically, back in 2017 Vacaville had no policy or procedure that alerted its officers of the risks of putting weight on the back of a prone and handcuffed suspect, or any policy or procedure that even mentioned "positional asphyxia." Not surprisingly, the defendant officers testified that Vacaville did not train them on the risks of placing body weight on the back of a prone and handcuffed individual. In fact, despite Samuel's death, Sergeant David Spencer, the commanding officer at the scene still does not believe that placing weight on a suspect's back is even a risk.

Following very contested litigation, including several rounds of motion practice (motions to dismiss and summary judgment), and the completion of fact discovery (which included the depositions of over 10 witnesses), the parties successfully mediated this case before Magistrate Judge Carolyn K. Delaney, with the municipality agree to resolve the matter for $1.25 million.

## II.   EXCESSIVE FORCE ALLEGATIONS

Plaintiffs were able to show that disputed material facts existed as to whether the named defendant officers used unreasonable and excessive force against Decedents Samuel Yasko by deliberately and intentionally applying their combined body weight on his back while he was lying in a prone position, causing him to die from positional asphyxiation. The plaintiffs further showed that disputed material facts existed as to whether defendants violated their rights to

4

familial association under the Fourteenth Amendment and as to whether the CITY OF VACAVILLE engaged in *Monell* violations by, among other things, failing to properly train its officers against the risks of positional asphyxia when handling a handcuffed and prone suspect.

### III. **CIRCUMSTANCES, NATURE, AND TERMS OF SETTLEMENT**

After extensive litigation, including the completions of fact discovery, the retainment of expert witness and full briefing and oral arguments on a motion for summary judgment, the parties engaged in mediation on June 22, 2023. The parties agreed to a settlement. In return for the consideration, Plaintiffs will fully release Defendants from all claims arising out of or related to the facts underlying this suit and will dismiss their lawsuit with prejudice.

### III. **SETTLEMENT AMOUNT**

Defendants agree to pay all named plaintiffs $1,250,000.00 (which amount includes attorneys' fees and costs) to settle the claim(s) asserted in the complaint. Dividing the sum into four equal shares, $312,500.00 of the settlement sum belongs to Plaintiff Carmel Garcia – decedent's mother. The remaining $937,500.00 to is to be distributed to the minors equally as indicated below.

### IV. **ATTORNEY'S FEES REGARDING MINOR PLAINTIFFS**

Plaintiffs and counsel entered into an agreement whereby counsel would be entitled to attorney's fees in the amount of 30% of the total gross recovery in this case. In addition to that, the attorneys are to be reimbursed for their costs, which total: **$14,811.61**. Given that there are four plaintiffs, the costs will be deducted on a pro rata basis in the amount of $3,702.90 from each individual plaintiff.

5

L.Y. is a male child of Decedent Samuel Yasko and who was 9 years old at the time of the incident. This minor was not subjected to any use of force but experienced the devastating and permanent loss of his father whom he had a very close and loving relationship. This child suffers from permanent emotional loss stemming from this incident. L.Y.'s share of the settlement, based on a 30% contingency fee, is $312,500 minus 30% attorney fees, minus $3,702.90 in costs, which equals $215,047.10.

M.Y. is a male child of Decedent Samuel Yasko and who was 11 years old at the time of the incident. This minor was not subjected to any use of force but experienced the devastating and permanent loss of his father whom he had a very close and loving relationship. This child suffers from permanent emotional loss stemming from this incident. M.Y.'s share of the settlement, based on a 30% contingency fee, is $312,500 minus 30% attorney fees, minus $3,702.90 in costs, which equals $215,047.10.

L.Y. is a male child of Decedent Samuel Yasko and who was 7 years old at the time of the incident. This minor was not subjected to any use of force but experienced the devastating and permanent loss of his father whom he had a very close and loving relationship. This child suffers from permanent emotional loss stemming from this incident. L.Y.'s share of the settlement, based on a 30% contingency fee, is $312,500 minus 30% attorney fees, minus $3,702.90 in costs, which equals $215,047.10.

Accordingly, the net recovery for the minor plaintiffs is: $645,141.29.

Although the benchmark for attorneys' fees in contingency cases involving minors is 25% of the recovery, *see Mitchell v. Riverstone Residential Group*, 2013 U.S. Dist. LEXIS 55176, 2013 WL 1680641 at *2 (E.D. Cal. Apr. 17, 2013); *McCue v. S. Fork Union Sch. Dist.*, 2012 U.S. Dist. LEXIS 102131, 2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012), the Court may award a higher amount upon a showing of good cause. *S.G.P. v. Tehachapi Unified Sch. Dist.*, No. 1:22-cv-01066-ADA-BAK, 2022 U.S. Dist. LEXIS 172556, at *25 (E.D. Cal. Sep. 22, 2022). In *Velez v. Bakken*, for instance, the Court awarded a 46% contingency fee in light of counsel's experience with similar cases, the amount of time counsel spent investigating the claims, and the risk counsel took in pursuing this action on a contingency basis. *Velez v. Bakken*, No. 2:17-cv-960 WBS KJN, 2019 U.S. Dist. LEXIS 14319, at *5-6 (E.D. Cal. Jan. 29, 2019).

Here, Plaintiffs' counsel took on a particularly risky case. In this case, decedent was intoxicated with methamphetamine and had attempted to commit suicide multiple times on the day he died. He jumped from the second story of a construction site and hit his head pretty badly. His brother and a friend thereafter decided to drive him home. During the drive, decedent again tried to commit suicide, this time by wrapping the seatbelt around his neck.

His brother and friend pulled into a gas station in Vacaville and called police. Officers arrived and found decedent's brother pinning his brother down. Officers told the brother and friend to move and then proceeded to apply weight to decedent, who was prone and exhausted, for an additional 4 minutes (including while handcuffed). One of the officers had his knee between the decedent's shoulder blades/by his neck area. Decedent lost consciousness and never recovered, physically dying days later after it was determined he was brain dead. A jury could have easily found that the officers did not act negligently nor employed excessive force.

However, counsel were able to show through vigorous discovery that the officers in question here were not trained on the dangers of positional asphyxia by their department; placed considerable weight on the victim's torso; and that the county coroner, based on those facts, believed that asphyxia could have been decedent's cause of death.

In addition to the above, counsel also prevailed on very contentious motion practice to ensure plaintiffs' case could be tried in front of jury. Plaintiffs' counsel did this while investing tens of thousands of dollars of their own funds into the case, at considerable financial risk to them. Accordingly, a 30% contingency fee would not at all be unwarranted in this case. It should be further noted that plaintiffs' counsel were able to obtain a good result – a seven figure result – for their clients based on their collective experience. For example, plaintiffs' counsel were the counsel of record in *Greer v. Hayward*, which case was relied on by this Court in its ruling on defendants' motion for summary judgment.

Finally, plaintiffs' counsel has worked extensively with the guardians ad litem and an annuity company to maximize the proceeds that each minor child will receive, as more fully set out below. At all times, plaintiffs' counsel has worked hard for the benefit of their clients.

V.   **MANNER OF DISBURSEMENT**

The settlement award to the minors will be disbursed in the following manner: Each child will have their settlement award used to purchase a tax-free separate annuity, which, thanks in large part to current high interest rates, will allow each child to recover well in excess of the $215,047.10 they are entitled to. Using $208,000 as the base settlement amount, M.Y. (who is currently 17 years old) stands to receive $293,600 in annuity payments between his 18th birthday and the age of 30. L.Y. stands to receive $328,950 in annuity payments, while the younger L.Y. stands to receive $375,160 in annuity payments between the ages of 18 and 30. *See* Cajina Decl., **Exhibit 1** (the proposed annuity structure.) Each of the annuities is structured so that each child receives a lump sum of $50,000 on their 18th birthday, which can be used for college, an

8

additional lump sum payment on their 21st birthday (of either $70,000 or $60,000 which can also be used for higher learning), an additional lump sum payment on their 25th birthday (of either $85,000 or $80,000), and a final lump sum payment on their 30th birthdays (each in excess of $100,000). *Id*.

Courts have approved of annuity payments in cases where minors have received hundreds of thousands of dollars in settlement amounts. *See, e.g., Garcia v. Cty. of Kern*, No. 1:20-cv-0093, 2021 U.S. Dist. LEXIS 157201 (E.D. Cal. Aug. 19, 2021); *Moore v. Cty. of Kern*, No. 1:05-cv-01115-AWI-SMS, 2009 U.S. Dist. LEXIS 75629 (E.D. Cal. Aug. 25, 2009).

## VI. SETTLEMENT IS IN THE BEST INTEREST OF THE MINOR PLAINTIFFS

Guardians Ad Litem FRANCISCA URIOSTEGUI, and VANESSA RUIZ., fully understand that if the compromise proposed in this petition is approved by the Court and is consummated, Plaintiffs L.Y., M.Y. and L.Y. will be forever barred and prevented from seeking any further recovery of compensation, even though the Plaintiffs' injuries and loss might in the future appear to be more serious than they are now thought to be. Guardians Ad Litem FRANCISCA URIOSTEGUI, and VANESSA RUIZ recommend this compromise settlement and the proposed distribution to Plaintiffs L.Y., M.Y. and L.Y. to the Court as being fair, reasonable, and in the best interest of the Plaintiffs, and request that the Court approve this compromise settlement and make such other and further orders as may be just and reasonable.

## VII. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court approve the settlement and compromise as set forth herein and the payment of attorney's fees. Plaintiffs further request all other relief to which they may be entitled.

Dated: December 4, 2023                                  Respectfully submitted,

By: /s/ *Stanley Goff*
Attorney for Plaintiffs

9

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, the foregoing document was filed electronically and served upon counsel of record via the Court's electronic filing system and electronic mail.

/s/ *Stanley Goff*

Stanley Goff